The final case on the docket this morning is agenda number four, case number 120958, People v. Vance v. Gray. Counsel, are you ready? You may proceed. Good morning. I'm Assistant Attorney General Katherine Dorsch on behalf of the people of the state of Illinois. This appeal is before the court today on the People's Petition for the Appeal as a Right from the Appellate Court to Judgment, holding that the domestic battery statute was unconstitutional as applied to this defendant, Matthew Gray. The defendant has crossed the field, raising a challenge to the sufficiency of the evidence. People ask that the court reject both the as-applied challenge and the sufficiency challenge. Turning first to the as-applied challenge, there are two points in which the parties do agree here. It's undisputed that the defendant satisfies that statutory definition of family or household members that renders him subject to the domestic battery statute. He satisfies that definition because he and the victim, Tina Carperon, had a dating relationship, albeit 15 years ago. He had a dating relationship with three years of age. It's also undisputed that the rational basis test governs here because there's no fundamental right implicated by the defendant's challenge. Under that test, under the rational basis test, we first look to the purpose of the statute, and then we look to determine whether the statute rationally implements that purpose. Of course, if the court is aware, statutes are presumed constitutional, and it's the defendant's burden as the challenger here to show that this is a clear violation of the statute. And under that differential rational basis review, the statute will be upheld, and I want to quote the language here, if a conceivable basis exists for finding it rationally related to the identified legitimate public interest. So it's a rather high burden for the defendant. The purpose inquiry, meaning detainment for very long, because this court has already held in People v. Wilson, a case from 2005, that the purpose of the public interest of the domestic battery statute is to curb the serious problem of domestic violence. And the statute implements that purpose and extends its protection from domestic violence to people who are defined as family or household members of the defendant. Moreover, the legislature has instructed that when we look at this definition, we're to do so with the purposes of the Domestic Violence Act in mind. And those purposes include recognizing that domestic violence is a serious crime, recognizing the fact that typically the legal system has done a bad job, not a very good job, of protecting victims of abuse and allowed abusers to escape punishment. We've also failed to protect and assist the victims. Finally, the purposes also include expanding the civil and criminal penalties for victims of domestic violence. Once we have that purposes in mind, we look to the language of the definition of family or household members, and we see that contrary to the appellate court's ruling here, there is no romantic intimacy requirement. The definition includes broad categories of people who have currently or have had personal intimate relationships, such as spouses, former spouses, persons who share or have shared common dwelling. The definition of this defendant satisfies persons who have or have had a dating relationship, and persons with disabilities or the elderly and their caregivers in existence. So the plain language should really demonstrate that the appellate court incorrectly read into this definition, this lingering romantic intimacy requirement, and because it did so, it incorrectly then found, it led to incorrectly find that the statute didn't satisfy the purpose. Of course, had this purpose been to protect only currently romantically intimate relationships or relationships that are still under a lingering effect of past intimate relationships, the legislature never would have included all these other categories of relationships that were never romantically intimate in the first place, much less currently so. Instead, as I said, there's a common thread here. It's a personal intimacy. As a result of these relationships, the people have maintained a level of trust, of intimacy with the other person that renders them vulnerable and susceptible to abuse at the hands of the other party. And as to past dating relationships, the plain terms of the statute are not time-limited, and they require, again, as I said, no romantic intimacy or lingering romantic intimacy. And once we construe that definition or the purpose of the statute, it's obvious to see that the statute does withstand rational basis analysis. It is rationally related to the purpose of the statute. Now, Defendant complains that his conduct shouldn't be punished as domestic battery because, although he did have a dating relationship that satisfies the statute, he hadn't dated in 15 years. But he concedes that the threat of domestic battery doesn't end in the release of defendants, and he's never shown that the legislature's choice to draw this line and treat all past dating relationships as domestic violence is unreasonable. In fact, the facts of Defendant's own case really demonstrate just how reasonable this line is. Defendant and the victim had known each other for about 20 years, and although they hadn't dated in 15 years, they continued to see each other on and off over the years. The relationship remained intimate, and the victim would often spend the night together often at the Defendant's home. As to the month before this incident, the victim, Tina Cartharine, testified that she'd been to the Defendant's home about three or four times. And she was questioned specifically about one incident in early October and one in the middle of October when she left some clothes at the Defendant's house. On the day before the incident, November 1st, the victim called the Defendant and asked him to purchase some items for her at the store. And he did so and called her up and said, come on over. They had drinks, they talked, they spent the evening together. The victim testified that she and the Defendant had sexual intercourse that night. The Defendant disputed that, but it's clear that they did share the same bed. And the argument that led to the stabbing here resulted after the Defendant accepted a phone call from his ex-girlfriend. And the victim found it disrespectful and felt that he shouldn't be talking to another woman while she was in his home. And finally, the Defendant testified that although he considered his current girlfriend, Lisa Flora Moore, his common-law wife, the two were separated at the time. And in his 9-1-1 call, the Defendant actually identified Park Run, the victim, as his girlfriend. All of this evidence of continued intimacy between the Defendant and his victim established the reasonableness of treating this Defendant and this victim as family or household members for purposes of the domestic battery statute. Again, substantive due process really only entitles the Defendant not to be convicted under an irrationally tailored statute. If your Defendant doesn't even show that there's an unreasonable or imperfect tailoring, much less a rational tailoring, therefore this Court should reject it as a flag challenge to the domestic battery statute. I have time. I would like to briefly address the sufficiency argument across the field. Mr. Storch, before you do, the aggravated battery conviction was vacated, right, as a result of other crimes evidence that came in under the aggravated domestic battery count? Is that right? Correct, yes. The appellate court wanted to set it back for retrial on the aggravated battery charge. So if we agree with the argument that you've just expressed, you're also asking that that would be reinstated? If we agree with which argument? If we agree with the argument that you just elicited, would we at that point, are you asking us on the ag battery to reinstate that? If you agree with my argument, if you agree with the people's argument, then the Defendant would have a conviction for aggravated domestic battery for choking the victim, he would have one conviction for aggravated domestic battery for stabbing the victim, and then there's an aggravated battery, a straight aggravated battery conviction for apparently the other stabbing. Right. That was only vacated, my point is that was only vacated as a result of the court feeling that the other crimes evidence that came in under... Yes, that's correct, Your Honor. Okay, all right. Because the other crimes evidence came in of the Defendant's domestic battery against his girlfriend, Laura Moore, in late 2010 and 2011. That came in for two purposes. It came in for the intent, modus operandi, actions of mistake purpose, but it also came in as propensity evidence. Because the court found the domestic battery statute unconstitutional, it's applied to the Defendant. It said, well, perhaps the judge wouldn't have allowed it in for the non-propensity purposes, and maybe the jury would have been confused. So they wanted to set it back. It wasn't necessarily error, but he wanted the judge to have another chance to look at it and see whether his mind would change if he knew it was inadmissible for the aggravated domestic battery and the propensity purposes. All right, thank you. Briefly, as to the sufficiency challenge, then, the Defendant actually makes a rather extraordinary request to the court. He asks the court to find the entirety of the victim's testimony credible merely because she'd been drinking and because of some perceived inconsistencies or omissions in her testimony. Obviously, we disagree with that, but I think the short answer to the challenge is that even in the absence of her testimony, even if we remove her testimony entirely, the evidence was still sufficient to convict. The Defendant's own testimony corroborated the victim's testimony. He testified that he twice both touched the victim on the back of the night he kept at his bedside table. And he pursued a self-defense theory, so necessarily in pursuing self-defense, he admitted the conduct, the charged conduct, he just argued that his conduct was justified. He said because the victim had bit him. The victim could not remember whether she had bit him. But even if he did, as the appellate court found, a racial jury would be justified in rejecting justification or finding he wasn't justified because he testified that the bite never broke the skin, never bled, and the person never attacked him with a knife. A racial jury could then find that he's the only one who could have stabbed her and that the stabbing was unjustified even if she bit him. But that's not the only evidence we have here. The Defendant testified that he saw the wound on her back and said, oh baby, I did cut you a bit. There's photographic evidence that was admitted of the marks on the victim's neck as well as the stab wounds. Forensic evidence establishes the DNA evidence on the knife. The major profile belonged to the victim and the Defendant couldn't be excluded from the minor profile. And Defendant dialed 9-1-1 after the attack, reported that he had stabbed his girlfriend and thought she might be hurt bad. He told the police too later, separate from the 9-1-1 call, that he had been in a verbal altercation with Carthron and it became physical and he had been defending his girl's honor, referring to Laura Moore. All of this evidence plainly suffices to convict even in the absence of Carthron's testimony. The jury was free to disbelieve the Defendant's theory that a bite that didn't even break the skin, if she bit him at all, justified him choking and stabbing her. If the Court has no questions, I'll reserve the remainder of my remarks for rebuttal. Thank you. Thank you. Mr. Bendick. Good morning, Your Honors. May it please the Court. My name is Chris Bendick from the Office of the State Appellate Defender. I represent the appellee, Matthew Gray. This case presents the question, should the definition of a family or household member include individuals who ended their dating relationship 15 years ago? As counsel said, parties agree, they dated for two years, but ended their relationship 15 years before the night of the charged offenses. Since the 1990s, Matthew and Tina viewed themselves as merely friends. Despite there being no active or even remotely recent dating relationship, the State charged Matthew with aggravated domestic battery. To prove this offense, the State had to prove that Matthew and Tina were family or household members. Family or household members include individuals who have or have had a dating or engagement relationship. Now, this Court in People v. Wilson found it was reasonable for the legislature to identify individuals as family or household members, people who had ended their dating relationship in a living arrangement just a few months before the charged offense. Mr. Bendick, isn't this a case, though, where the substance of the defined term is far more important than its title? I mean, I can understand the appeal of saying that it makes no sense to label someone who the defendant dated 15 years ago as a family or household member. But let me ask you this question with respect to constitutionality. Forget about the domestic battery statute for a second. What if the legislature created a new Class II felony called aggravated battery of a former dating partner? Same elements as aggravated battery, but a more serious penalty because the victim is someone with whom the defendant once had a dating relationship. Would that statute violate due process? Well, in the same situation, as applied to Matthew Gray, and if the same announced purpose of the statute, which we know here from Glatter v. Fabinacci and Blackwood, that is, to protect people that are in the universe of physical or psychological abuses that only someone as close as a relative can inflict, that same purpose is still announced. Because the legislature here, when it included dating relationships or former dating relationships into family or household members, didn't even provide a definition of what a dating relationship, nor provide any idea on why they were doing this. And so the appellate courts had to step into this gap and define what a dating relationship is. And if we apply the same serious courtship test that the appellate courts have adopted out of California, that test says, at a minimum, an established relationship must have a significant romantic focus. And if the parties are only family or household members because of that romantic focus, it bears no reasonable relationship to the interests that the legislature sought to protect. If that romantic intimacy has vitiated, there is no interest left that is reasonable. And here, we have both parties admitting that Matthew and Tina, we haven't dated for 12 years, we're merely friends. They're casual acquaintances at this point. The state makes much of some sort of remaining intimacy between the parties. There was none, both by the testimony of both parties. They saw each other on two separate dates. Don't we see situations, though, where dating partners are at risk for abuse while the relationship is intact? Certainly. But doesn't that often increase when the relationship ends? Correct. There is a period close to the termination relationship where there is an increase in violence. However, shown in the briefs, the studies that we provided this court, it's kind of like a downhill slope. The further in time you get away from the termination relationship, the less risk there is, which at 30 months, there's almost no risk. And that's for people that have been proven that there was prior abuse. So your answer to my hypothetical question with that class two was that it would likewise, your client would be entitled to an unconstitutional as applied challenge. If the legislature further did not provide any sort of reasoning like it did here when it connected dating relationships to family or household members, we would be making the same as applied challenge to Matthew and Tina's situation where the parties have not dated for 15 years. And the state's argument is essentially that it can, in perpetuity, charge someone with domestic battery premised on a former dating relationship and presumably other relationships in the statute. Presumably this would apply to roommates. I mean, the statute includes family or household members of people who are living or have lived with each other. Imagine college roommates 15 years down the line being prosecuted for domestic battery because they got into a fist fight over an argument at the bar. And this court has said, and people will be all more in, that there can be no bright line test for determining household membership. Each case must be determined on its specific facts. Given the specific facts of this case, the state has not shown how Matthew and Tina, family or household members, and considering those people as family or household members, is reasonably related to the statute's purpose. Nor is it a reasonable method of achieving the objective that the legislature sought in enacting it. Since the 1990s, they have a quintessential definition of a casual relationship. Tina denied wanting to rekindle her relationship with Matthew or move in with him. Matthew had been in a multi-decade relationship with Laura Moore, a woman he identified as his common-law wife. Turning back again to the state's claim that they remained intimate, I believe that's a misreading of the record regarding the parties sleeping together since the 1990s. If you look at pages AA55-60 and AA93-94 and AA227, this court should see that it's in reference to when they lived together back in the 1990s when they slept over at each other's house, not when Matthew was in his apartment in October of 2011. In October of 2011, they saw each other on two dates, October 5th and October 15th. First time was Matthew was outside the apartment. Second time was Matthew was again outside his apartment. Tina saw him outside. Hey, can you hold some clothes for me as I go to work? Sure. Came back later that evening, got her clothes, left. Then we have the incident. That's it. These are not intimate parties. Romantic intimacy initiated long ago, as did the state's interest in charging these parties as aggravated domestic battery. So intimacy has to be read into the statute? When the appellate court has analyzed the statute, because the legislature, in passing the domestic battery statute and adopting dating relationships as family or household members, gave us no guidance and provided no definition for dating relationships. So the appellate court has, in Allison C., People Be Young, and analyzing the serious courtship test for what a dating relationship is, has focused on romantic intimacy. And that is the only reason why these parties are family or household members, is because of that romantic intimacy. And for this statute to have a reasonable purpose, there must still be some romantic intimacy or connection to that in order to consider these parties as family or household members. Once you've gone away from that, there is no reasonable relationship anymore to the statute's purpose. And the state's unreasonable use of its police powers have real consequences here for Matthew. Raise the class of conviction from a class 3 to a class 2, increase the sentencing range from 2 to 5 years to 3 to 7, and also increase the term of mandatory supervised release from 1 year to 4 years. If your honors have no further questions on the as-applied challenge, I'd briefly like to address the cross-appeal sufficiency of the evidence issue. The parties do not contest Tina's level of intoxication. She drank a pint of Jack Daniel's whiskey and 40 ounces of beer until she described her own level of intoxication as being high and still drunk at the time of the incident. This extreme level of intoxication caused her not to be able to remember whether she bit Matthew and precipitated the entire event. These facts alone warrant a reversal of Matthew's conviction. Going beyond Tina not being able to remember whether she bit the defendant, her level of intoxication caused numerous other inconsistencies between her statements after the incident and her trial testimony. These include whether they had an argument that morning, whether Matthew had choked her, how she was cut, and when the incident occurred. Finally, her actions after the incident indicate a culpable mind. After having just been allegedly choked and stabbed without provocation, what did she do? She walked right by two responding police officers, took two separate buses 30 minutes away to her daughter's house. Your honors have no further questions. We ask for the appellate courts holding on the as-applied challenge to be upheld, reversing the aggravated domestic battery convictions, and on the sufficiency of the evidence issue, we ask for Matthew's remaining aggravated battery conviction to be reversed. Thank you. No questions, thank you. Motion. Briefly, just a few points. The defendant's focus and the appellate court's focus on the romantic focus of the relationship is all irrelevant at this point. The appellate court has said true to establish a dating relationship. The appellate court has said there must be a significant romantic focus. But we don't need to look at that anymore, because we've already established there is a dating relationship, there was a dating relationship, and it's by virtue of that past dating relationship, just like all the relationships of women and staff, the disabled and their caregivers, by virtue of that past or current relationship, that the legislature sought to protect these victims and punish the defendants for the harm, for the violation of trust. And the legislature's allowed to engage in this sort of line drawing and decide that it's going to protect all past dating relationships. They do it all the time. The defendant's not shown that it's irrational. Again, this is not a case like the Baikman case in our brief or the Johnson case. Maybe you recall the Baikman case is the one where the legislature specified that a juvenile who's convicted or found suspended for underage consumption of alcohol will have their license automatically suspended. And the Baikman defendant came before the court and said, well, that's not rational. That's irrational because I didn't drive. Yes, I engaged in underage consumption of alcohol, but I didn't drive. So there's an imperfect tailoring here. It violates substantive due process as applied to me. And this court said, no, the legislature could rationally conclude that juveniles who consume alcohol when they're underage might then drive, and that would serve the purpose of the statute of just keeping the high-risk safe. The defendant hasn't even, in this case, he's never even posited such an imperfect tailoring here. The defendant's circumstances are exactly the sort of circumstances that the legislature sought to prevent. The legislature sought to punish this conduct and protect victims like Ms. Cartham. It also indicates that he has provided studies that suggest that the rate of violence after people have had a dating relationship, or however we're going to define it, decreases over time. Should we look at that? Your Honor, the defendant has argued that all that statistical evidence is irrelevant to his challenge here because it's an as-applied challenge and not a facial challenge. So, you know, certainly it's useful to consider, but it doesn't make it irrational. Even if it declines over time, he has to show that there's no conceivable basis that the legislature would determine that this could possibly serve the purpose of the statute. That's just simply high burden. That's those kind of statistical things that defendants argue have no relevance here, but also they wouldn't satisfy the burden. One more point about the line drawing. Legislature engages in it all the time, and it avoids difficult problems of proof sometimes. Certainly a defendant who had a dating relationship is put on notice. He's on notice by virtue of this definition that he may be subject to prosecution for domestic battery. But it also has, as the amici point out in their brief, an important purpose to serve. This clarity has an important purpose to serve in the domestic violence act because those are meant to be rather streamlined proceedings where a victim could go before the court, perhaps pro se, or with the assistance of someone who's a non-lawyer. Simply come forward and identify, satisfy the statute, say, yes, we were dating, we were in a dating relationship, and then the court shall issue the order of protection. But if we start engaging in these lengthy discussions about whether it's rational or whether it has to be some sort of a mini-trial on whether there's a past dating relationship or whether they're still under this influence of romantic intimacy, it's going to prevent problematic criminal cases, but it also has a negative effect on domestic violence cases that are meant to be plenary proceedings where they go in and get immediate protection without having to engage in these mini-trials on that question. If there's no further questions, we'd ask that you adverse the appellate court's judgment and demand for consideration of the defendant's remaining appellate issues. Thank you. Case number 120958, People v. Matthew Gray, will be taken under advisement as agenda number four. Mr. Dorsch, Mr. Bendick, we thank you for your arguments today. You're excused for their thanks.